Good morning, your honors. At the police court, my name is attorney Timothy Baldwin. I represent the appellant, Mr. Musa, in this matter. We're asking the court to consider this morning two issues. One, when does a duty of consistency apply and under what context does it apply when we are dealing with a case that involves a summary judgment motion? Secondly, should we allow evidence to be admitted which, without any context, should that evidence be presented and not be allowed to be examined to determine its probative value? This case stems from a long-term ongoing audit that involved a restaurateur. This restaurateur had some misrepresentations in his tax returns and also in his employment tax returns. The result of that was an audit that took place sometime around 2009 at which two agents came in and did an examination of Mr. Musa's tax returns. It is undisputed that two items of importance is that one of the agents, Mr. Bannock, completed his audit or made a portion of his audit on January of 2010. Thereafter, Ms. Valentine came in and completed the remainder of the examination. During that time of examination, the taxpayer put forth an effort to clean up his house and provide the IRS with the proper filing of his tax returns and showing of his expenses. In doing so, he had to relinquish the previous accountant who showed himself to provide somewhat sloppy accounting work. In that process, the... That's one interpretation, right? The other interpretation was that Mr. Musa did not provide him with all the information he needed, such as the cash payments to family members as wages. That is an interpretation, Your Honor, and one that kind of belies the actual case and the trial. And because if you look at the record in terms of the trial and you understand the practices and procedures of accounting, you note that the replacement accountant indicated that on the very documents that would be called the source documents for which all accountants use to... I don't think you can put this on the accountant. I'm sorry? I don't think you can put this on the accountant. There was a concession by your client that he under-reported receipts to the tune of $1.6 million during the years in question here and was paying under-the-table cash wages and himself maintained grossly inadequate... ...records and offered a number of shifting explanations for this. Well, Your Honor, I want to make sure that the court is aware that there has never been the representation that there was not misrepresentations made to the IRS. The issue that we are contending is... Right, and those misrepresentations are on your client. He is culpable and you don't challenge the fraud findings. We're not challenging the fraud findings. That is correct, Your Honor. So you can hardly stand before this court and try to put it on the accountant who is operating under an extreme disadvantage because your client was behaving deceitfully. I would remind the court that whether or not my client was acting in a manner of fraud, that question has been answered and concluded by the tax court. And that is not challenged here. The question is, even in light of fraud, does the government have permission or do they have the right to disallow legitimate business expenses that should be allowed in determining what the actual tax liability should be? Whether or not fraud is present here is not the issue at hand. What is at hand is the duty of consistency. And in determining the duty of consistency, the court ruled, as many have looked at this case, seeing that such bad actions taken by the taxpayer here... that duty of consistency applies when there is a major question of material fact here, a genuine question of material fact here. And that is, how much did the government know when Mr. Moussa presented his wages to the government for examination? So if I can follow up on that, counsel, I understood your brief to be arguing, in essence, that there was a kind of negligent investigation, that the government should have realized much earlier that your client's wage payments were far greater than those he had actually reported. Is that right? No, Your Honor. I think what I was trying to argue, what I believe is my argument this morning, is that the government did a thorough job and they acted within their training and experience. The government argues that, I cite the IRS manual regarding the examination. We only cite it not as an authority of what they should have done, but you cite it as to what they do do, what their actions are in doing an examination. I don't think, counsel, I don't think we're connecting on this. Because your... let me try to put it a little more bluntly. How should the IRS have figured out that your client was paying undisclosed cash wages before he filed those amended returns? The IRS did figure out way before that because there were submitted POS system reports to the IRS during the examination as early as 2010. I'm asking about wages. Correct. Those POS systems contain information that flows on to the employee's W-2 forms, W-4s, 941s. They use that information very thoroughly in what's usually called an indirect method to track what wages were considered allowed and which wages were considered unallowed. And how does that system pick up cash payments under the table to relatives? What it does pick up is that there was a misrepresentation of the employment tax returns immediately. How? I'm sorry? How does it pick that up? Because the reconciliation of what's on the POS system as it relates to tips that are calculated and accumulated on the POS system and what the employment tax returns show would not have balanced, would not have reconciled. I'm sorry. I don't understand how cash payments by Mr. Moussa off the books to relatives would show up in this automated system you're talking about. Well, the cash payments would not have shown up, but it does not change the fact of whether or not the government relied on those misrepresentations when they know for sure that the returns are incorrect. Let me try it in a slightly different way. Your client, when he filed the amended employment tax returns, said that these errors had been discovered in 2012, correct? When he filed the amended tax returns, he was referring to what was the tax liability that was owed as a result of the misrepresentations. One of the things you have to answer when you file an amended return like this is when did you discover the error, right? Correct. And he put May 2012, if I recall correctly. And that's what the replacement accountant put down as a result of the cleaning up of Mr. Moussa's records and presenting to the IRS what the actual numbers should have been. But to what extent is your theory based on the notion that the IRS should have figured that out well before your client and his accountant did? Can you repeat your question, Your Honor? When do you think the IRS should have figured out that wages were being underreported? It is clear to me, based on the examination of the special enforcement program agent, Agent Valentine, and the case being referred to CID, that the agency was quite aware of the fraudulent activity on that particular account. When? As early as January of 2010. Okay. So your theory is that the IRS should have figured this out by January, or did figure it out by January 2010, but the people actually engaged in the fraud didn't realize the mistake until May of 2012? Is that the theory? The theory is that the people engaged in the fraud would have filed a tax return for the employment taxes around May of 2012 to correct what they had already represented to the government as the amended tax returns, which had been accepted by the IRS on many instances of all of the changes and the adjustments made. Notice here, Your Honor, that most of all the adjustments made in the amended returns were accepted by the agent. The agent did a thorough examination of the amended returns and accepted most of the changes made by the replacement accountant. Here, at the point of examination, there is no representation made by the agent that the only reason they're not allowing these wages is because of duty of inconsistency. That argument doesn't exist until much later when the litigation aspects of this audit begins. Right, but the IRS could not have anticipated that you would attempt to belatedly report and claim deductions for these wages, these under-the-table wages. I think the record is clear that the agent made a conscious decision that instead of making the change to the employment tax returns, instead of imputing the actual tax that was supposed to be calculated for the taxpayer, she made a conscious decision based on her testimony at trial that she was going to, one, impute income into Mr. Moose's actual income by taking off the POS system, tip income that was reflected on those POS systems, taking sales tax which was also reflected on those POS systems, and imputing that as income to the taxpayer. They did this as a sanction towards what this court sees and the previous courts saw and the IRS saw as fraudulent activity.  You're in your rebuttal time now. I'm sorry? I said you're in your rebuttal time. I understand. Are there any? I thought I was trying to answer Your Honor's question. Would you like to reserve the rest of your time? Yes. Okay, that's fine. Mr. Dale. Good morning. May it please the Court, my name is Ivan Dale on behalf of the Commissioner of Internal Revenue. The question in this case is whether a taxpayer may deduct wages that he willfully chose not to report on W-2s and employment tax returns until after the period for assessing employment taxes and employee income tax had expired. The answer to this question, as the tax court found, is provided by the duty of consistency, which is a tax doctrine akin to judicial estoppel. The duty of consistency recognizes that our tax system is one of self-reporting and that the commissioner can and generally must rely on the taxpayer's assertions in returns in assessing tax. So it imposes on taxpayers the equitable responsibility to report transactions which have an impact on different taxable periods or different taxes in a consistent manner. So in other words, it's really a method of ensuring compliance as much as it is to protect the commissioner against whipsaw. So I think it's important that we be real clear on the dates here. There were four years at issue, 2006 through 2009, and for all four of those years, the taxpayer admittedly underreported the wages on his employment tax returns. And by underreporting those wages, he then paid less in employment tax. He also enabled the employees who received those wages to escape income taxation. He escaped penalties associated with that and personal responsibility that would accrue under Section 6672 of the Code. And the IRS, having no knowledge of the cash payments under the table when the employment tax returns are received and the W-2s are received, assessed tax accordingly, relied on those statements. And I don't think there's any dispute that the IRS relied on the employment tax returns when they were filed. The question is, if later on, then, the taxpayer attempts to deduct more wages than he previously reported, is that enough to put the IRS on notice? Does that require the IRS to go back and then audit these employment tax returns? Or is the taxpayer bound by his prior assertion? It has a flavor of kind of catch me if you can. Yeah. And so, you know, the dates of this, there's two sets of amended returns. There's the amended income tax returns, which are the taxpayer's personal income taxes. And those are the ones on which he was attempting to deduct the wages. Then there is amended returns with respect to the employment taxes. He filed amended returns where he tried to deduct these wages in 2011. He didn't file amended returns with respect to the employment taxes until correcting the error in which he would have to pay additional tax until 2013. Well, by that time, the IRS could no longer assess these taxes.  Right. So he wants to benefit from his fraud. Right. Effectively, he's seeking unjust enrichment. He wants to benefit from the very wrongdoing. I mean, he concedes that. He knew, at least as of May 2012, that he was underreporting this income. I mean, there's testimony that he intentionally did not put his family members on the payroll so they wouldn't have to pay tax. So it's a pretty willful intent to evade. You can omit the pretty modifier. Blatantly willful attempt to evade. And that's basically what the duty of consistency says. It's an equitable rule that says the taxpayer cannot benefit from his own fraud. That's what the Supreme Court held back in 1932, and it's what every court has held since. It should be the rule applied to this case. And it would be quite a windfall to permit him to deduct these wages when the IRS could not collect the employment tax, could not go after the employees because it was too late, and then was reported. When he filed the amended employment tax returns, did he submit additional payments for the taxes due? He submitted additional employment tax payments, but because the IRS was barred from assessing those taxes, there was no tax against which to apply the payments, so the IRS was obligated then to refund those amounts with interest. Are you kidding? It's the law. Section 6501 of the Internal Revenue Code governs when a tax may be assessed. The IRS isn't in the business of collecting money that isn't a tax. Within the statute of limitations. You can't voluntarily – a taxpayer can't waive the statute of limitations in that way. Well, the taxpayer and the IRS can't agree to extend the statute of limitations. Right. But it does require the consent of the taxpayer for sure. There's a couple of other issues. I don't know. They didn't really get discussed in the opening argument. I think one was about the taxpayer's motion to recall a witness that had already testified. The way that that issue was teed up in the opening statement of counsel was that should we allow evidence to be admitted without allowing this gentleman to testify again regarding what that evidence means? And I just point out that the taxpayer didn't object to the introduction of this evidence, and the evidence was just a list of 10 bank accounts. He consented to the admission of that evidence. So the issue is not really should we allow the evidence. I think he consented to that. The issue is whether or not he can then put a witness back on the stand to ask him a question that he already asked him about the number of bank accounts the taxpayer had. And then months after the fact, after the guy had the opportunity to go back, look through his records, do a little research, and figure out what these accounts are about, he already had the opportunity to present this evidence, and because he already had that opportunity, it was not an abuse of discretion for the tax court to decline to reopen trial to hear this one man's testimony. There is another issue with respect to admitting the answer. In that regard, we will rest on our briefs, and unless the court has any further questions, I would submit that the decision of the tax court below is correct and should be affirmed. All right. Thank you, Mr. Dale. Thank you. Mr. Baldwin, you have two minutes left. Thank you, Your Honor. Your Honor, I cannot deny that there is a number of, a level of disgust as it relates to the volume of fraud that has been determined by the IRS in this particular case. There is, though, the question at hand regarding the law and whether or not my client, by having the benefit of deducting legitimate wages, had benefited from that fraud. This question has come up and has been briefed on, and it establishes that the penalties imposed, additional penalties imposed, and taxes owed by the taxpayer would be in the range of $147,000. The benefit to the taxpayer would have been $358,000. And so when you take the numbers, when you add those numbers up, basically, or subtract those numbers, basically the government gets a benefit of $280,000 that is not being able to be deducted by my client in terms of tax liability. In addition to that, during this examination, the government made the decision that instead of picking up the tax returns for examination, because they did request the tax returns and they did complete a thorough examination of those tax returns, what they did not do on three separate occasions where they extended the statute of limitation for the employment tax, they did not extend the statute of the limitations for the income tax, they did not extend the statute of limitations for the employment tax, locking in an additional approximately half a million dollars that they imputed as income to the taxpayer. This decision, as it relates to duty of consistency, was done by the IRS's conscious choice that the best way to sanction the bad acts of fraud here was to lock in these sanctions of imputing income and not allowing the actual tax liability. It was to hold him to his fraudulent returns. I'm sorry, Your Honor? I think the theory is that the best approach would be to hold the taxpayer to his fraudulent returns. Well, the actual responsibility of the IRS is to make sure that the proper tax is raised for the taxpayer, not to engage. This is an argument that sounds kind of ashen in the mouths of somebody who had been filing fraudulent tax returns for years, and it seems like he ought to count himself fortunate that the criminal division decided not to go forward. I understand that, Your Honor, and I appreciate that. The only point that I would point out here is the taxpayer took forth and put forth an amazing amount of effort to try to correct these errors, and for the most part did. The only major deduction that the IRS refused to allow That conflicts with the findings on the fraud. I'm sorry? That conflicts with the findings on the fraud, which you have not contested. That is correct. We have not contested the fraud. Right, and there was a finding that your client failed to adequately cooperate and continued his deception into the audit. But I think we have your argument. Thank you. Your time has expired. Thank you, Your Honor. The case is taken under advisement. Our thanks to both counsel.